UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SIGFREDO A. VELASQUEZ,

                    **Docket No.:**
                    19-cv-06129-JMA-AYS

                Plaintiff,

     *-against-*

INCORPORATED VILLAGE OF FREEPORT,
FREEPORT VILLAGE POLICE DEPARTMENT,
CHIEF OF POLICE MIGUEL BERMUDEZ, in his
individual and official capacity, MAYOR ROBERT
KENNEDY, in his individual and official capacity,
POLICE BENEVOLENT ASSOCIATION
PRESIDENT SHAWN RANDALL, in his individual
and official capacity, DETECTIVE SERGEANT
DONNIE ETHIER, in his individual and official capacity,
ASSISTANT CHIEF RAYMOND HORTON in his individual
and official capacity, VILLAGE OF FREEPORT TRUSTEE
DEBRA MULE,  in her individual and official
capacity, DEPUTY MAYOR JORGE MARTINEZ, in his
individual and official capacity, TRUSTEE RONALD ELLERBE,
in his individual and official capacity,

                **AMENDED**
                **COMPLAINT**

                **JURY TRIAL IS DEMANDED**

                Defendants.
------------------------------------------------------------------X

       **PLAINTIFF, SIGFREDO A. VELASQUEZ,** by and through his attorneys, The Law

Offices of Frederick K. Brewington, as and for his Amended Complaint as of right against the

Defendants herein, states and alleges as follows:

### PRELIMINARY STATEMENT

       1.      This is a civil action seeking monetary relief (including humiliation, embarrassment,

past and on going economic loss), injunctive relief, declaratory judgment, compensatory and punitive

damages, disbursements, costs and fees for violations of the Plaintiffs' rights, brought pursuant to

*42 U.S.C.* § 1981, *42 U.S.C.* § 1983, 2nd Amendment and the Equal Protection Act of the 14th

Amendment to the United States Constitution, Article 15 of the Executive Law of the State of New York (Human Rights Law) Section 290 and 296, and award of attorney's fees/cost pursuant to *42 U.S.C.* § 1988.

2.     Specifically, the Plaintiff alleges that the collective Defendants engaged in discrimination and retaliation and negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiff of the appropriate employment position and title and pay through acts that were taken against Plaintiff because of his race, color, national origin and retaliation. These acts resulted in misrepresentation, misinformation, harassment, and character assassination.

3.     Said acts were done knowingly with the consent and condonation of the FREEPORT VILLAGE POLICE DEPARTMENT, INCORPORATED VILLAGE OF FREEPORT,   CHIEF OF POLICE MIGUEL BERMUDEZ, in his individual and official capacity, MAYOR ROBERT KENNEDY, in his individual and official capacity, POLICE BENEVOLENT ASSOCIATION PRESIDENT SHAWN RANDALL, in his individual and official capacity, DETECTIVE SERGEANT DONNIE ETHIER, in his individual and official capacity, ASSISTANT CHIEF RAYMOND HORTON in his individual and official capacity, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE,  in her individual and official  capacity, DEPUTY MAYOR JORGE MARTINEZ, in his individual and official capacity, and TRUSTEE RONALD ELLERBE, in his individual and official capacity, all with the express purpose of harming, targeting and silencing the Plaintiff, and generally violating his rights as protected by the United States and New York State Constitutions, and federal and state statutes, rules and regulations.

2

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343.

5.      Venue herein is proper under 28 U.S.C. § 1391(b); the cause of action arose in the Eastern District of New York - specifically, in Nassau County.

6.      Prior hereto, on October 16, 2018 Plaintiff filed Charge of Discrimination Case No. 10199018 against Defendants with the New York State Division of Human Rights (hereinafter "NYSDHR") alleging his wrongful discrimination due to the Defendants' animus on the basis of Plaintiff's race, color, and national origin.  NYSDHR cross filed a charge of discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), under EEOC Charge No. 16G-2019-01490.

7.      On August 1, 2019, Plaintiff received a Notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 16G-2019-01490 (copy annexed hereto **Exhibit** A).  As of the filing date of this complaint, ninety days from the date of receipt of the Notice of Right to Sue has not yet passed.

8.      Plaintiff received a dismissal on Charge No.: 10162287 from NYSDHR.

**9.**      Prior to the filing of this Amended Complaint, all Defendants were duly served and have filed an Answer dated 12/27/19.

## PARTIES

10.      SIGFREDO A. VELASQUEZ (hereinafter either "Mr. Velasquez" or "Plaintiff") is a Hispanic male, originating from El Salvador, and is a citizen of the United States and resident of the State of New York. Plaintiff was employed and/or formerly employed by Defendants INCORPORATED VILLAGE OF  FREEPORT, and FREEPORT VILLAGE POLICE

3

DEPARTMENT.

11.     At all times relevant in this Complaint, Defendant INCORPORATED VILLAGE OF FREEPORT (hereinafter "VILLAGE") was and is a duly constituted municipal corporation of the State of New York existing and operating under and by the virtue of the laws of the State of New York.

12.     At all times relevant in this Complaint, Defendant FREEPORT VILLAGE POLICE DEPARTMENT (hereinafter "POLICE DEPARTMENT") is an agency of Defendant VILLAGE.

13.     Upon information and belief, during all times relevant to this Complaint, MIGUEL BERMUDEZ, (hereinafter "BERMUDEZ") was and is a citizen and resident of the State of New York; and at all times herein mentioned was a the Chief of Police, employed by the VILLAGE, under the direction of the POLICE DEPARTMENT and VILLAGE, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or VILLAGE, and acting in his individual and official capacity.

14.     Upon information and belief, during all times relevant to this Complaint, ROBERT KENNEDY (hereinafter "KENNEDY") was and is a citizen and resident of the State of New York; and at all times herein mentioned was the chief executive officer of the Village of Freeport and was, at all relevant times the Mayor of Freeport and is employed by the VILLAGE, under the direction of the VILLAGE, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or VILLAGE, and acting in his individual and official capacity.   At all times relevant, Kennedy was and is a decision maker and creator of policy for the Village and the Police Department.

4

15.     Upon information and belief, during all times relevant to this Complaint, SHAWN

RANDALL (hereinafter "RANDALL") was and is a citizen and resident of the State of New York;

and at all times herein mentioned was the President of the Police Benevolent Association, employed

by the VILLAGE, under the direction of the POLICE DEPARTMENT and VILLAGE, and was

acting in furtherance of the scope of his employment, acting under color of statutes, ordinances,

regulations, policies, customs, and usages of the State of New York and/or VILLAGE, and acting

in his individual and official capacity. RANDALL is, and was an aider and abettor to the wrongful

acts taken against Plaintiff and failed to prevent or intervene in the abuse to which Plaintiff was

being subjected.

16.     Upon information and belief, during all times relevant to this Complaint, DONNIE

ETHIER (hereinafter "ETHIER") was and is a citizen and resident of the State of New York; and

at all times herein mentioned was a Detective employed by the POLICE DEPARTMENT, under the

direction of the POLICE DEPARTMENT and VILLAGE, and was acting in furtherance of the scope

of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and

usages of the State of New York and/or VILLAGE, and acting in his individual and official capacity.

17.     Upon information and belief, during all times relevant to this Complaint, RAYMOND

HORTON (hereinafter "HORTON") was and is a citizen and resident of the State of New York; and

at all times herein mentioned was the Assistant Chief, employed by the VILLAGE, under the

direction of the POLICE DEPARTMENT and VILLAGE, and was acting in furtherance of the scope

of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and

usages of the State of New York and/or VILLAGE, and acting in his individual and official capacity.

HORTON was a decision maker and creator of policy for the Police Department.

18.     Upon information and belief, during all times relevant to this Complaint, DEBRA

MULE (hereinafter "MULE") was and is a citizen and resident of the State of New York; and at all

times herein mentioned was an elected Trustee employed by the VILLAGE, under the direction of

the VILLAGE BOARD, and was acting as a Trustee when violating Plaintiff's rights and was acting

under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New

York and/or VILLAGE, and acting in his individual and official capacity.  At all times relevant,

MULE was and is a decision maker and creator of policy for the Village and the Police Department.

19.     Upon information and belief, during all times relevant to this Complaint, JORGE

MARTINEZ (hereinafter "MARTINEZ") was and is a citizen and resident of the State of New York;

and at all times herein mentioned was a the Deputy Mayor and employed by the VILLAGE, under

the direction of the VILLAGE, and was acting in furtherance of the scope of his employment, acting

under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New

York and/or VILLAGE, and acting in his individual and official capacity. At all times relevant,

MARTINEZ was and is a decision maker and creator of policy for the Village and the Police

Department.

20.     Upon information and belief, during all times relevant to this Complaint, RONALD

ELLERBE (hereinafter "ELLERBE") was and is a citizen and resident of the State of New York; and

at all times herein mentioned was a the Trustee and employed by the VILLAGE, under the direction

of the VILLAGE, and was acting in furtherance of the scope of his employment, acting under color

of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or

VILLAGE, and acting in his individual and official capacity.  At all times relevant, ELLERBE was

and is a decision maker and creator of policy for the Village and the Police Department.

6

## STATEMENT OF FACTS

21.    Sigfredo Velasquez, Plaintiff, who is a Hispanic male, originating from El Salvador, commenced his employment with Defendant Freeport Village Police Department (hereinafter "Police Department" or "Defendant") on October 3, 2014 as a Police Officer.

22.    Mr. Velasquez has provided consistent satisfactory performance and service as a professional through the entirety of his time as a Police Officer assigned to Patrol.

23.    Mr. Velasquez was subjected to disparate treatment, harassment, retaliation, discrimination, and a hostile work environment, all of which was caused by and allowed to continue by Defendants.

24.    Prior to working for the Police Department, Plaintiff served the U.S. Marine Corps beginning in 2009 and served on active duty, where he was deployed on two (2) tours, one (1) in Afghanistan and one (1) in the Pacific. Plaintiff continues to proudly serve in the U.S. Marine Reserves. In total Plaintiff has proudly served in the military service of the United States for ten (10) years and counting. While a police officer Plaintiff became a volunteer firefighter for Freeport Fire Department's Vigilant Hose Company No. 2 and continues to serve the people of Freeport in that capacity. Plaintiff has further served Freeport by volunteering with Freeport's Adopt-A-Cop Program through which Plaintiff met with fourth graders in Freeport schools.

25.    During Plaintiff's service as a police officer, there were no questions as to his qualifications regarding his ability to perform his job at the Police Department and at all times during Plaintiff's employment with the Police Department and the Incorporated Village of Freeport Plaintiff performed his duties in an exemplary fashion. Despite the fact that his work environment was permeated with discrimination, harassment, and became increasingly hostile and retaliatory, Plaintiff was a dedicated Police Officer.

7

26.     In March of 2017 plaintiff was involved in a verbal altercation with a former girlfriend that took place in Miami, Florida. After the altercation Plaintiff returned to New York. Plaintiff's girlfriend at the time placed false charges against Mr. Velasquez in Miami, Florida. Upon being informed of these charges, Plaintiff was granted permission by the Police Department to return to Miami to address the charges placed against him. Thereafter, on June 14, 2017 Plaintiff was exonerated of all charges and the matter was dismissed and Mr. Velasquez "adjudicated not guilty."

27.     Despite his total exoneration, upon Plaintiff's return from Miami, Florida, he was immediately punished by Defendants by being stripped of his gun, badge and his police identification. Additionally, he was summarily suspended for thirty (30) days with no pay and officially charged with "Conduct Unbecoming an Officer." During and following that time, Plaintiff endured further ridicule when instead of being placed back on patrol he was placed on modified duty and required to clean the evidence room in the station, a job reserved for the janitor not a police officer. Said evidence room was located in the basement of the police station with no air conditioning Plaintiff was further punished by Defendants by requiring him to engage in this hot, physical and dirty assignment in the middle of the summer.

28.     Plaintiff had never been previously charged with any violation of a rule or regulation while in the Police Department.  Plaintiff opposed his treatment and complained that he was being singled out due to his race, color and national origin as his treatment was inconsistent given that he had been found not guilty on the false charges which had been dismissed.

29.     On July 5, 2017 Plaintiff was called into the office of  Defendant BERMUDEZ. Present in this meeting were Defendants HORTON, ETHIER, and RANDALL all of whom are Caucasian.  Mr. Velasquez was not advised prior to the meeting by anyone including Defendant

8

RANDALL that a meeting would be taking place. In said meeting Defendant BERMUDEZ advised Plaintiff that he was terminated as of July 5, 2017.

30.    Defendant BERMUDEZ unlawfully terminated Plaintiff because of his race, color and national origin, and in retaliation for opposing discriminatory actions and practices. Defendant BERMUDEZ provided Plaintiff no reason for his termination at said meeting on July 5, 2017. All reasons Defendant BERMUDEZ later presented to justify his termination of Plaintiff are pretextual and used in attempts to cover his real reasons for terminating plaintiff which are because of his race, color and national origin, and in retaliation for opposing discriminatory actions and practices.

31.    Defendants RANDALL, HORTON, and ETHIER aided and abetted in the unlawful and discriminatory termination and conduct of Defendants BERMUDEZ, and KENNEDY and the Police Department and continue to do so.

32.    Defendants RANDALL, HORTON, and ETHIER knew that Plaintiff was being called into the office of Defendant BERMUDEZ for purposes of being unlawfully terminated because of his race, color and national origin, and in retaliation for opposing discriminatory actions and practices.

33.    Although Defendants RANDALL, HORTON, and ETHIER knew that Plaintiff was being unlawfully terminated they aided and abetted the unlawful and discriminatory termination and conduct of Defendants BERMUDEZ, KENNEDY and the VILLAGE POLICE DEPARTMENT in assisting to present pretextual reasons for Plaintiff's termination.

34.    Defendant RANDALL did not advise Plaintiff of said termination that was to take place nor did he properly represent Plaintiff in his position as PBA President prior to termination, during or after the termination.  His failure to do so was in support of the actions taken against Plaintiff solely because of Plaintiff's race, color and national origin, and in retaliation for opposing

9

discriminatory actions and practices.

35.     Needless to say, Plaintiff was in shock and surprised by the information from Defendant BERMUDEZ as Plaintiff had not received any indication from anyone at the Police Department and Plaintiff was not provided any reason which would cause his termination. Plaintiff was not afforded an opportunity to respond to this termination nor was he presented with any alleged charges against him.   Plaintiff was not afforded an opportunity to consult with an attorney or his union representative Shawn Randall prior to this meeting with Defendant BERMUDEZ . Plaintiff was immediately stripped of his pay and benefits without due process.

36.     Plaintiff later came to find out that the offered rationale for his termination, was that he was being alleged to have violated Section 107: Conduct Unbecoming an Officer and Section 124.12 regarding his failure to notify his command of his change of residence.

37.     Plaintiff filed a grievance challenging his wrongful termination.  As a result, a Disciplinary Hearing took place on September 8, 2017 and on September 20, 2017 before Hearing Officer, Roger Maher, who was chosen by the Freeport Village Police Department and the Freeport Police Benevolent Association as a neutral arbitrator.  In the hearing, witnesses were called and heard by Mr. Maher, exhibits were received into evidence and argument was presented by both sides. One of the witnesses who testified on Plaintiff's behalf was his former girl friend, Angelina Crespo.

38.     Following a full airing of the matter relating to Plaintiff's termination, Hearing Officer Roger Maher issued a twenty (20) page report on December 18, 2017 recommending that **Mr. Velasquez be reinstated to work with full back pay for the incident taking place in Miami.** Hearing Officer Roger Maher stated that "because Velasquez has a clear interest in this outcome of this matter, that the Department should have interviewed him **before** he was terminated. Principles of fundamental fairness and basic due process should have dictated that his side of the story should

10

have been sought and considered by the Department before a termination decision was made." (Emphasis added) Hearing Officer Maher recommended that Plaintiff's punishment should consist of a two (2) week suspension due to Plaintiff's untimely notice to the Police Department of his change of residence.

39.     Plaintiff learned that between March of 2017 through September of 2017 the Police Department, including Caucasian officers, Defendant RANDALL, PBA Trustee Steven Rampanelli, and PBA Recording Secretary Theodore Cirko made frequent visits, while in police uniforms, while armed, and while on-duty to Plaintiff's now ex-girlfriend, Angelina Crespo, attempting to persuade her and intimidate her into testifying against Mr. Velasquez at the Disciplinary Hearing.

40.     On September 20, 2017 Angelina Crespo ultimately did testify in Plaintiff's Disciplinary Hearing *in favor of Plaintiff* stating that the charges she placed on Mr. Velasquez in Miami were false and inaccurate.

41.     In a clear abuse of authority and process, Defendant HORTON ordered every Village of Freeport Police Officer via police e-mail as a "Roll Call" and "Post Conditions Check" to respond to the place of business of Angelina Crespo to harass and intimidate her into testifying against Plaintiff. This was done under the guise of enforcing a complaint of parking violations.  As a result, Freeport Officers conducted and documented in official police blotter reports that over five hundred (500) of these intimidation checks were completed, in a very short period of time, without finding any violations. This practice was never done to any business in Freeport or Nassau County at any time to this extent.

42.     To date Plaintiff has not been interviewed by any member of the Village of Freeport Police Department as to the allegations made against him and used as an excuse to deprive him of

his employment and career. At no time before his termination was Plaintiff afforded the opportunity to defend himself to any allegations made against him. The Police Department wrongfully terminated Mr. Velasquez without affording him his fundamental rights and/or due process of law.

43.     Unbeknownst to Mr. Velasquez, the Police Department had decided to disregard any decision of the Hearing Officer and had decided to terminate him *prior* to the Hearing Officer's recommendations. Same is evidenced by their issuance of Mr. Velasquez's badge #108 to another officer on November 14, 2017, more than one (1) month *before* the Hearing Officer issued his recommendation.

44.     On December 21, 2017 the Board of Trustees of the Incorporated Village of Freeport held a Special Meeting whereby they voted to disregard the decision of Hearing Officer Maher and failed to reinstate Mr. Velasquez. Mr. Velasquez was harshly punished in contradiction to the recommendations of the Hearing Officer which the Police Department chose and in contrast to treatment given to white police officers who received the same or worse charges than Mr. Velasquez and whom have not been terminated.

45.     Those that voted *In Favor* of purposefully disregarding the Impartial Hearing Officer's twenty (20) page recommendations to reinstate Mr. Velasquez were: Defendants KENNEDY, MULE, MARTINEZ, and ELLERBE. Each of said persons who voted *In Favor* of disregarding said recommendation aided and abetted in upholding the unlawful and discriminatory practices of the FREEPORT VILLAGE POLICE DEPARTMENT, Defendants BERMUDEZ, KENNEDY, RANDALL, ETHIER, and HORTON.

46.     The December 21, 2017 meeting also violated open meeting laws as there was no public notice of said Board meeting. The Board meeting was not a regularly scheduled meeting of the Village Board. Said meeting did not appear on the official list of the Board meetings, nor on the

interactive calendar on the Village's official website. No notification of this Board meeting was posted in any regular and customary locations where the public was normally informed about pending Board meetings, nor was it posted anywhere on the Village website. Therefore there does not appear to have any public notice of the meeting also there was no emergency situation that would require the board to meet on December 21st rather than on its regularly scheduled date, January 8, 2018. Since the public was not informed of said meeting there were no residents of Freeport present. The lack of notification was solely done because of Mr. Velasquez's race, color and national origin, and in retaliation for opposing discriminatory actions and practices.

47.     The dismissed charges placed upon Plaintiff subsequent to the incident in Miami were pretextual and were wrongfully used to terminate Plaintiff and treat subject him to differential treatment because of Mr. Velasquez race, color and national origin, and in retaliation for opposing discriminatory actions and practices.

48.     This incident on December 21, 2017 was the culmination of other numerous and prior racist, retaliatory and discriminatory instances which Mr. Velasquez endured at the hands of his employer and his fellow officers. There were at least three (3) other incidents which occurred where Mr. Velasquez was subjected to racist, discriminatory and retaliatory acts due to his Latino race, color and national origin. Mayor Kennedy and Defendant BERMUDEZ condoned and were aware of these incidents as most of them were reported.

49.     For instance, on October 6, 2016, white Police Officer and PBA Recording Secretary Theodore Cirko placed a dead racoon on the hood of my police car. Mr. Velasquez reported this incident to Sergeant Michael Jockers who is Caucasian. Mr. Velasquez explained to Sgt. Jockers that he was offended.  Further Plaintiff explained that a racoon represents a derogatory term to African Americans and relates in general to minorities and that Plaintiff was patrolling an area made up of

13

mainly African Americans and minorities who would find a dead racoon on a cop car offensive. Sergeant Michael Jockers laughed it off and clearly indicated that he did not take Mr. Velasquez complaint seriously. Ultimately, Officer Cirko was fined **one (1) day of pay** for his charge of "Conduct Unbecoming an Officer" and an internal investigation against him was closed within two (2) months. This failure to address the hostile and serious actions taken by Officer Cirko is in stark contrast to the treatment of Plaintiff and other Latino and African American Officers, who have endured harsher punishments for the same alleged charge of "Conduct Unbecoming an Officer" and who have had internal investigations open for over seven (7) months for actions much less offensive than Officer Cirko's.

50.     After Mr. Velasquez's termination someone placed racially offensive stickers on what was Mr. Velasquez's assigned locker at the Police Station. Said stickers once again depicted a racoon. The word racoon was clearly targeted at Plaintiff and intended to depict the offensive racial slur 'coon'. Also placed on what was Mr. Velasquez's  assigned locker was a sticker with the word "perp". The stickers were found to be offensive to minority officers and a complaint was made to Deputy Police Chief Michael Smith, ASSISTANT POLICE CHIEF RAYMOND HORTON, and CHIEF BERMUDEZ. However, upon information and belief no investigation was conducted to find out which of the Village employees were engaged in this race based action, and no disciplinary action was taken against any officers. No officers were interviewed, which would be the minimum level of investigative measure to determine the cause and origin of such discriminatory offense.

51.     It is a common practice for the Freeport Police Department to keep internal affairs and disciplinary matters open for a longer period of time when the matter concerns a minority employee of the Freeport Police Department. Whereas Caucasian Police Officers have their

14

investigations and disciplinary matters closed in a expeditious manner. The prolonged period of investigation against minorities is a form of intimidation and is intended to created fear and harass minority officers.

52.     The discriminatory actions that have been taken against Mr. Velasquez were continually condoned and encouraged by Defendant BERMUDEZ who identifies himself with respect to his race as "white" as he has previously testified to in the Federal case of *Christopher Barella v. Village Freeport*, et al on May 14, 2014.

53.     In the matter of *Barella* Defendant BERMUDEZ was asked about the parody of a movie that he showed at his first supervisors meeting called "The Underground" which depicts Adolf Hitler's last ten days in the bunker. When asked what was the purpose of showing a movie with Adolf Hitler, Defendant BERMUDEZ responded that "the idea is sometimes I feel like this person [Adolf Hitler] inside, that I have that much rage[.]" Said transcript also refers to a prior deposition of Defendant BERMUDEZ , in which he testifies, under oath and penalty of perjury that his ethnicity is "white". Thus, although he is of Cuban decent, Defendant BERMUDEZ does not identify as Latino or Hispanic.

54.     The racial insensitivities that Mr. Velasquez is addressing have been raised in the past concerning Defendant BERMUDEZ. In fact, Mr. Velasquez informed his supervisor of his concern and offense taken by the acts of Defendant BERMUDEZ.   Upon his showing of the parody with Adolf Hitler, many people were offended by this racially insensitive act. Said act is just one of the many racially motivated activities that take place against minorities in the Freeport Police Department.

55.     There are vast amounts of evidence demonstrating the disparate treatment between the Latino and Black Officers versus treatment towards Caucasian officers within the Freeport

Village Police Department including, but not limited to the following:

- **Michelle Haslam,** an African-American female Police Officer. Officer Haslam was reprimanded and fined 60 hours of pay when Caucasian DETECTIVE SERGEANT DONNIE ETHIER initiated a disciplinary action against Ms. Haslam upon discovering that Ms. Haslam had left her pistol in a locked security drawer that was inside the police station which was under the watch of another officer. The hostile punishment bestowed on African American Officer Haslam is inconsistent and contrary to the punishment bestowed on Caucasian Officer SHAWN RANDALL. Caucasian Officer SHAWN RANDALL is a Firearms Instructor and therefore should be held to a higher standard with respect to his care and responsibility of firearms. Randall lost an M4 police assault rifle that had been placed in his responsibility and ownership to transport said M4 assault rifle. SHAWN RANDALL unlawfully transported said M4 police assault rifle in his personal pick-up vehicle, as opposed to a Freeport Police Department vehicle. The M4 police assault rifle was carelessly misplaced by SHAWN RANDALL and was found by a civilian in the middle of the street, near a park. Internal Affairs determined that said M4 police assault rifle was under the care and responsibility of Caucasian Officer SHAWN RANDALL. Officer SHAWN RANDALL caused extreme risk of danger by his careless misplacement of an M4 police assault rifle. Unlike Officer Haslam, Officer SHAWN RANDALL received a verbal warning with no disciplinary actions by CHIEF BERMUDEZ.

- **Fredis Periera,** is a Latino male Police Officer. Officer Pereira felt that Caucasian Police Officer Michael Pomerico was treating Latino's unjustly and in a discriminatory manner. Officer Pereira complained of Mr. Pomerico's discriminatory and unjust actions against Latinos to CHIEF BERMUDEZ. Instead of investigating Officer Periera's complaints against Caucasian Officer Michael Pomerico , CHIEF BERMUDEZ ordered that Officer Periera be fined twelve (12) hours of pay and reprimanded for complaining of Officer Pomerico's discriminatory actions towards Latinos. The prejudicial actions taken upon minority officers such as Officer Periera instill a fear within minority officers to not complain about discriminatory actions taken by Caucasian officers, or they will be reprimanded and docked their pay.

- Above-referenced Caucasian Officer Michael Pomerico, has abused his power numerous times. Caucasian Officer Michael Pomerico has coerced other police officers to issue his ex-wife multiple traffic violations and to cause the impound of her car, despite the car belonging to her. Caucasian Officer Michael Pomerico additionally has violated an Order of Protection and was arrested by Nassau County Police Department for said violation. However, these acts have not deterred The Village from promoting Caucasian Officer Michael Pomerico to Detective, a decision made by POLICE CHIEF BERMUDEZ and MAYOR KENNEDY.

- Above-referenced Caucasian Officer Michael Pomerico, was charged with violating the following which include but are not limited to:

> ▸ Section 212.20, sub-sections 10, 11, and 20 on July , 2003;

16

> ▸ Section 107, **Conduct Unbecoming an Officer** on December 19, 2003;
> ▸ Section 110.10, Manner of Discharging Duties on December 19, 2003;
> ▸ Section 150.20, Truthfulness on December 19, 2003;
> ▸ Section 114.10, Obedience to Lawful Orders on December 3, 2013;
> ▸ Section 114.65, Care of Vehicles on March 6, 2014;
> ▸ Section 142.10, Tours of Duty on February 17, 2016.

Officer Pomerico <u>was not</u> terminated for any of these violations he was either issued fines or issued a written reprimand by CHIEF BERMUDEZ or the acting Chief at the time. Additionally, Officer Pomerico has been charged with a class E Felony of Criminal Mischief in the 3rd Degree and was permitted to serve as an Officer in the Village of Freeport and now serves as a Detective.

- Kevin Edell is a Caucasian Sergeant, who was on probation as he had been newly promoted to said position. Sergeant Edell took a Village of Freeport Police vehicle while off duty and not authorized to use said vehicle. This act is equivalent to a misdemeanor crime of unauthorized use of a motor vehicle. Sergeant Edell took said police vehicle to another town where he had sexual relations with a woman inside of said vehicle while parked at a train station parking lot. On May 12, 2010 Sergeant Edell abandoned his post as a Sergeant in Command of the police station and drove to another town to have sexual relations with a women inside the police vehicle. A passerby saw Sergeant Edell having sexual relations inside the vehicle and reported it. The incident was subsequently reported to police internal affairs unit. Sergeant Edell was charged with Section 107, Conduct Unbecoming a Police Officer, Section 121.80, Availability on Duty, and Section 144, Use of Department Vehicle. Although Sergeant Edell was on probation, Chief Bermudez fined Sergeant Edell ten (10) twelve hour days pay. Sergeant Edell was not demoted by Chief Bermudez nor by Mayor Kennedy. Instead, Sergeant Edell was promoted to the position of Firearms Training Supervisor. Subsequent to being promoted to Firearms Training Supervisor Sergeant Edell has since been promoted to Lieutenant by CHIEF BERMUDEZ.

- On February 22, 2016, Caucasian Officer Theadore  Cirko was charged with violating Section 142.10, Tours of Duty and was fined one (1), 10 hour day. On December 1, 2016 Caucasian Officer Theadore Cirko was charged with violation Section 107, Conduct Unbecoming an Officer, and was fined one (1), 12 hour day.

- **Bergica McBride** was a Latina female Police Officer with the Freeport Police Department. Ms. McBride was wrongfully terminated, less than one year after CHIEF BERMUDEZ took office as Police Chief because he claimed her Spanish accent restricted her ability to understand some of the information being taught to her and because she did one less push up than required by CHIEF BERMUDEZ. Ms. McBride was routinely harassed and suffered discrimination because of her race, color and national origin.

- A Caucasian 911 Dispatcher was unable able to apply for a job at the Freeport Police Department due to her residency in Suffolk County. Upon information and belief, CHIEF BERMUDEZ falsified her papers and allowed her to use his personal address for her application in order for her to appear to live in Freeport and thus qualify for a 911 dispatcher position in Freeport Police Department.

55.   Caucasian Officers, Sergeants, and Detectives receive different and preferential treatment. Plaintiff has no prior nor current convictions, no previous violations of any rules or regulations while in the Freeport Police Department and no criminal history. However, Plaintiff was wrongfully terminated with pretextual reasons of failing to notify of an address change because of his race, color and national origin.

56.   Defendant BERMUDEZ consistently withholds promoting people of color. The following are examples of promotions that are withheld by Defendant BERMUDEZ to people of color:

- The position for Deputy Police Chief became available and an African American, Sergeant **Andrew Rhan** was eligible for said position. Sergeant Rhan was very much qualified for said position. CHIEF BERMUDEZ failed to give this position to Sgt. Andrew Rhan and instead appointed Caucasian Officer, Michael Smith. Michael Smith had a lower rank than Sergeant Rhan on the civil service exam, unlike Sgt. Rhan, Officer Michael Smith held no college degrees and had less training and experience than Sergeant Rhan. Nevertheless, CHIEF BERMUDEZ and MAYOR KENNEDY promoted Michael Smith to Deputy Police Chief instead of Sgt. Rhan because of Sgt. Rhan's race, color and national origin.

- **Thomas Williams** was the only African American male detective in Village of Freeport Police. Detective Williams was promoted to Detective prior to CHIEF BERMUDEZ becoming Chief. Upon Bermudez becoming Chief, Detective Williams was forced by CHIEF BERMUDEZ to investigate cases that would occur after his scheduled working hours. However, upon Detective Williams being replaced by Caucasian Detective Pomerico, Detective Pomerico was at no point required by CHIEF BERMUDEZ to investigate any cases that would occur past his working hours. Detective Williams has since been promoted to Sergeant however he has been wrongfully placed on the night shifts. There are available day shift positions that are being filled by Caucasian Junior Sergeants such as Junior Sergeant Edward Martin who is permitted to work the day shift. However, this privilege was never offered to African American Sergeant Williams because of his race and color.

- Another example of promotions being withheld by CHIEF BERMUDEZ to people of color

18

is when the position for Detective Sergeant became available. Sergeant **Thomas Williams** was the only Sergeant with Detective experience, which included a total of twelve (12) years prior to becoming Sergeant. Instead of Sergeant Williams being promoted, Caucasian and Defendant SERGEANT DONNIE ETHIER was promoted to Detective Sergeant although he did not posses any previous detective or investigations experience.

• Respondents have also denied and withheld promotions to **Bobby Ford**, an African American Police Officer. Officer Ford was a New York City Police Detective prior to working at the Village of Freeport Police Department. Since Officer Ford's time at the Freeport Police Department there have been at least five (5) different occasions where the position for Detective has become available. Officer Ford applied for said positions each time and has been denied by CHIEF BERMUDEZ each time. Instead of Officer Ford being appointed as Detective, CHIEF BERMUDEZ has chosen to hire a less experienced and less qualified Caucasian Officers for the position of Detective. Officer Ford was treated as such because of his race and color.

• The promotion from Police Officer to Police Sergeant is done in part through a promotional exam given by the Nassau County Civil Service Commission. Once the exam is given a list of eligible candidates are established based on the best exam scores. The VILLAGE OF FREEPORT and FREEPORT POLICE may then choose one (1) candidate for every three (3) candidate that passed the exam beginning with the highest scoring candidate. An announcement had been made that a Sergeant's Promotional was being given to the VILLAGE OF FREEPORT Police Officers. In order to prevent African American Officers from being promoted to Sergeant, Deputy Police Chief Michael Smith gave a list of questions that were to be on said test, the answers to said questions, and study materials to four (4) Caucasian police officers. Deputy Police Chief Michael Smith did not give these questions, answers, or study materials to any African Americans Police Officers. Ultimately all four (4) Caucasian Police Officers to whom which  Deputy Police Chief Michael Smith gave questions, answers, and study materials to scored in the top four (4) positions on the list and all four (4) have been promoted to Police Sergeant. Because of Deputy Police Chief Michael Smith actions that are made permissible by the VILLAGE OF FREEPORT POLICE, CHIEF OF POLICE MIGUEL BERMUDEZ, and ROBERT T. KENNEDY no African American Police Officer scored high enough to be promoted.

57.    Defendants herein have also discriminated against Black and Latino candidates by selectively chosen which Police Officers are to undergo and pass the Freeport Police Department Qualifications Test. The Freeport Police Department Qualifications Test is not an officially sanctioned test by Civil Service or any other governmental agency. The test is *ad hoc* and applied arbitrarily. It is applied in a discriminatory fashion and not applied consistently throughout the

Village of Freeport Police. Said test is not written, rather it is a test where a gun instructor calls out commands to shoot a target and the *selected* Police Officer is to shoot said target. Officers are given no instructions, opportunity to practice, nor a basic minimum training prior to taking said test which is administered by three (3) Caucasian Police Instructors and one (1) Caucasian Supervisor.

58.     Freeport Police Department Qualifications Test is said to be mandatory for all Village of Freeport Employees however upon information and belief, Police Chiefs, who are Caucasian or identify as white, do not perform said test. Their Written Training Order documents are falsified to show that they passed said test but they did not actually go through the requalification of their gun at the police range.

59.     **Genique Bell** is an African American female who was hired by the Village of Freeport Police Department. Ms. Bell is the first black female to have ever been hired by Defendant BERMUDEZ. Although Ms. Bell had passed the Nassau County Police Academy which included two (2) weeks of weapons training, Defendants ordered Ms. Bell to submit for requalification with her gun under the supervision of Defendants in the Freeport Police Department Qualifications Test.

60.     Respondents decided that Ms. Bell failed the test and stripped Ms. Bell of her gun and badge. Every previous Caucasian Officer who failed said test has not been stripped of their gun nor badge. Ms. Bell was treated as such because of her race and color.

61.     Additionally, the Freeport Police Department have no Spanish speaking Detectives despite the fact that Freeport's population is comprised of over 40% persons who are Latinos, of which many do not speak English. Despite the clear need to have Spanish speaking Detectives, this failure to hire, promote or assign Spanish speaking Detectives is purposefully done by the Freeport Police Department in order to not promote people of color and to not provide effective assistance to the Latino community in Freeport.

20

62.     Upon termination, Mr. Velasquez was not given a "Good Guy" letter stipulating that he was terminated in good standing. In addition to stripping him of his title, position and livelihood, this action by the Defendants has marred Plaintiff's record of service within the police community and within the Village of Freeport, and thus has served to severely limit him from future employment with any government agency. The VILLAGE has wrongfully denied Plaintiff his license and permission to posses and carry a firearm in concert with all Defendants and their acts of discrimination and retaliation.

63.     Plaintiff has been forced to retain employment as security in the Syosset Central School District rather than continuing to serve as a Police Officer. Mr. Velasquez is still currently a volunteer member of Freeport Fire Department.

64.     Just one year before his discriminatory termination, Mr. Velasquez's life story, including his journey to the United States and his life of service while in the U.S. Marines and the Freeport Fire Department was reported in the Freeport Leader and, a local paper, on December 22, 2016 and in the LI Herald. This report is a further demonstration of his achievements and his commitment to public service, which has been selectively overlooked by the Freeport Police Department.

65.     Plaintiff has been discriminated against as a consequence of his race, color and national origin and has been subjected to abuse by his peers and supervisors. This discrimination has been condoned by the VILLAGE and the POLICE DEPARTMENT and then ratified and compounded by the acts of the County of Nassau.

66.  Plaintiff's efforts to remedy this situation have been met with complete resistance and an unwillingness to address the blatant acts of abuse and discrimination. Plaintiff has been

embarrassed, harassed, humiliated, discriminated and retaliated against, all while trying to remain professional and to serve the community.

67.     Mr. Velasquez has informed the Defendants that he has been discriminated against as a consequence of his race, color and national origin and has been subjected to verbal and physical abuse by his peers and supervisors. In his Notice of Claim, Mr. Velasquez told the Defendants that, he "was subjected to racist, discriminatory and retaliatory acts due to his Latino race, color and national origin", yet nothing was done to remedy these acts.

68.     As a result of the discriminatory and retaliatory behavior of the Defendants, Mr. Velasquez has suffered from extreme stress, anxiety and fear.

69.     Mr. Velasquez's efforts to remedy the situation by filing complaints were met with complete resistance and an unwilling spirit. It is clear that Plaintiff's concerns were seen as insignificant and that it is acceptable to be subjected to discriminatory and retaliatory action by the Defendants on account of race and national origin.

70.     Defendants' actions have caused Plaintiff to suffer and continue to suffer loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

71.     Mr. Velasquez has applied for a position in the Nassau County Police Department. The Nassau County Civil Service Commission has disqualified Mr. Velasquez on the grounds of "poor employment record". Additionally, due to the actions of Defendant against Mr. Velasquez's police officer basic training certification has been invalidated by the Division of Criminal Justice Services.

72. As a result of the Defendants' discriminatory acts, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation.

## DEFENDANTS LACK ANY JUSTIFICATION FOR DENYING PLAINTIFF FROM RECEIVING *A RECOMMENDATION FOR A GOOD GUY LETTER* AND ASSOCIATED PRIVILEGES

73. Plaintiff herein has the right to possess and to be issued a license to keep and bear arms, as well as the right to carry a pistol and hand gun for his safety.

74. Upon information and belief, the Nassau County Police Department is responsible for issuing pistol licenses in Nassau County. This includes license privileges to own and license privileges to carry and conceal firearms.

75. Further, when the Nassau County Police Department receives applications for gun permits, the Police Department scrutinizes applications and follows-up with applicants' employers and/or former employers in order to make determinations.

76. Upon information and belief, when the applicant is a former police or peace officer, the Nassau County Police Department Pistol Licensing Bureau looks for and heavily considers "Recommendation for Consideration of an Application for a Pistol License for Retiring Peace/Police Officers" and/or "Good Guy Letter" forms.

77. Upon information and belief, a license to carry and conceal firearms is more difficult to obtain than just a license to own a firearm and the applicant must demonstrate a particularized need to carry and conceal a firearm in public.

78.     Upon information and belief, a license to carry and conceal firearms are generally granted to law enforcement officers and peace officers, ex-law enforcement officers and ex-peace officers, some security officers, others that transport large sums of money and/or valuable goods, as well as persons who engage in dangerous professions.

79.     Plaintiff herein is a former police officer, who qualifies for a license to carry firearms due to the nature of his former employment.

80.     Defendants are aware that the Plaintiff herein has interacted with dangerous prison inmates as well as members of the community who Plaintiff has arrested during his respective time with the Freeport Police Department. Defendants are also aware that many of these inmates return to society outside of the jail when released and are part of the surrounding community. Often, these inmates live among and/or near Police Officers, including Plaintiff herein.

81.     Defendants also know that, as a result of these interactions with inmates, Plaintiff as do many police officers- now walks the streets in fear because he walks among the same persons with which he had interaction as a police officer, some of which he arrested and help during the prosecution of alleged crime. It has been known that retired officers also routinely get into altercations and/or are forced to subdue, report, support, disciplinary charges and criminal charges against persons with whom they have had prior interaction in their roles as police officers.

82.     Among these persons with which Plaintiff routinely can come in contact with, are dangerous gang members who engage in gang activity in the Village and surrounding communities.

83.     Due to the dangerous nature of a Police Officer's job, Police Officers (such as Plaintiff herein) fear for the safety of themselves as well as their families. As such, the need to be issued privileges to carry or own a firearm to protect themselves, their families, and their properties is paramount.

24

84. The need to possess privileges are more important for individuals such as Plaintiff, Mr. Velasquez, who is no longer an active member of law enforcement and require heightened personal security as a result.

85. Defendants are aware that both the State and Federal governments recognize the need to afford retired police/peace officers the right to carry firearms as a result of the dangers they each face.

86. *New York State Penal Law* § 400 authorizes the issuance of permits to carry firearms to retired Police Officers such as Plaintiff Mr. Velasquez and said section also outlines what is necessary to obtain same.

87. This section also outlines that which disqualifies individuals from receiving and carrying permits. Defendants are aware that Plaintiff meets all of the qualifications for issuance of a pistol permit under this law/section.

88. Defendants are aware that *Penal Law* 400 requires that Mr. Velasquez must have the Freeport Police Department sign-off on a "Good Guy Letter", which is to be provided with Plaintiff's application to the Police Department Licencing Bureau.

89. *19 USC* § 926 - also referred to as the United States Law Enforcement Officers Safety Act of 2004 ("*LEOSA*"), as a matter of well-settled Federal Law, Plaintiff is entitled to carry a concealed firearm in any jurisdiction in the United States regardless of State or local licensing qualifications.

90. By summarily denying Plaintiff's application for a the support and recommendation for a "Good Guy Letter," Defendants are aware that they are placing Plaintiff's life in danger and jeopardy - without reasonable basis of justification. In addition, Defendants have failed to justify

25

their actions or provide any meaningful due process connected to their denials of recommending and granting Plaintiff a "Good Guy Letter."

91.     Defendants' sole purpose for denying Plaintiff's request for support and positive recommendation of his application for a "Good Guy Letter," placing restrictions in same, for ignoring the law and policy and/or for failing to provide afford Plaintiff his due process right to defend himself, is to harm, discriminate and retaliate against Plaintiff simply because of his race, color and national origin. There is no other reason for Defendant's denial other than to further discriminate against Plaintiff based on his race, color and national origin and to punish Plaintiff for his opposition to being treated differently and in a discriminatory manner.

92.     Plaintiff does not have any type or level of disability that would disqualify him from carrying firearms sense his wrongful termination or otherwise jeopardize the health, well-being and good of the public.

93.     Plaintiff does not have medical or psychological issues that would cause him to be restricted in his ability to carry firearms.

94.     Defendants' intent, is and was, to discriminate, violate rights punish, instill ongoing pressure, fear and anxiety in and on Plaintiff.

95.     As a direct consequence of the actions of the collective Defendants, Plaintiff was unreasonably denied his respective rights and is made to live in perpetual fear for his safety. Plaintiff has been treated differently and in a discriminatory fashion had has been denied his rights as a Latino man of color and has been denied to property and right to care for his own well-being.

96.     Plaintiff has suffered monetary damages, special damages, legal fees, and unwarranted medical fees/costs, loss of time, loss of privileges and immunities due to the discriminatory actions of Defendants.

26

## AS AND FOR A FIRST COUNT
## TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e
## AGAINST THE VILLAGE OF FREEPORT

97.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 96 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

98.     Defendant VILLAGE through their agents and employees, discriminated against the Plaintiff in his employment based on Plaintiff's race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

99.     As a direct result of said acts, Plaintiff has been deprived of his rights and freedoms, mentally and physically harmed, to the extent of which he suffered from his loss of his employment. Plaintiff has been wrongfully terminated and was and continues to be the subject of abuse, ridicule, and discrimination. He has been subjected to humiliation, loss of dignity, loss of title/ status, removal from his position, removal from his assignment, and suffered a diminished quality of life. Plaintiff has incurred incidental fees/ damages, loss of pay, loss of benefits, and other damages/ injuries due to the constructive discharge from his career and employment.

100.    As a result of the VILLAGE'S discriminatory acts and those of its agents, employees, servants and personnel, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## AS AND FOR A SECOND COUNT
### *42 U.S.C. § 1981*- RACE AND COLOR DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND RETALIATION

101.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 100 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

102.     The above discriminatory pattern and practice based on race and color by Defendants VILLAGE POLICE DEPARTMENT, INCORPORATED VILLAGE OF FREEPORT,   CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR ROBERT KENNEDY, POLICE BENEVOLENT ASSOCIATION PRESIDENT SHAWN RANDALL, DETECTIVE SERGEANT DONNIE ETHIER,  ASSISTANT CHIEF RAYMOND HORTON, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE,  DEPUTY MAYOR JORGE MARTINEZ, and TRUSTEE RONALD ELLERBE through their agents and employees violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

103.     As a direct and proximate result of said acts, Plaintiff has suffered loss of employment and continues to suffer loss of income, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

104.     Because of Plaintiff's color, race and Hispanic heritage he has been subjected to different, disparate, and abusive mistreatment as detailed above and has been treated differently than white individuals.

105.     As a result of the Defendants' discriminatory acts, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs and

28

attorney's fees.

### AS AND FOR A THIRD COUNT
*42 U.S.C.* § 1983 - EQUAL PROTECTION, DUE PROCESS
2nd and 14th AMENDMENT VIOLATIONS

106.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 105 of this Complaint with the same force and effect as though fully set forth herein.

107.    Plaintiff has a protected liberty and/or property interest in his firearms license, which has been taken away and/or denied without due process of law.

108.    Additionally, Plaintiff also had the protected right to be treated fairly in terms of disciplinary actions, a right which was taken away from him when he was wrongfully terminated.

109.    Defendants FREEPORT POLICE DEPARTMENT, INCORPORATED VILLAGE OF FREEPORT, CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR ROBERT KENNEDY, POLICE BENEVOLENT ASSOCIATION PRESIDENT SHAWN RANDALL, DETECTIVE SERGEANT DONNIE ETHIER, ASSISTANT CHIEF RAYMOND HORTON, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE, DEPUTY MAYOR JORGE MARTINEZ, and TRUSTEE RONALD ELLERBE unreasonable summary denial of Plaintiff's right to a "Good Guy Letter" and/or infringement upon Plaintiff's right to obtain a pistol permit and license to carry firearms post-retirement, due to his race, color and national origin, amounts to a summary denial of Plaintiff's right to equal protection of the laws following public employment, denial of due process of law as well as discriminatory and unequal treatment as a Police Officer in good standing with the VILLAGE OF FREEPORT and the FREEPORT POLICE DEPARTMENT.

110.    The discriminatory post-hoc rule-making, selective enforcement, and summary denial by state actors, and policymakers such as Defendant violates the privileges and immunities section of the 14th Amendment, as well as Plaintiff's right to equal protection under the law, and his 2nd Amendment right to bear arms.

111.    Defendants have intentionally and invidiously discriminated and/or retaliated against Plaintiff with respect to Mr. Velasquez's former public employment and benefits of retirement because of his race, color, and national origin.

112.    Defendants' infringement upon and violation of Plaintiff's rights protected under the United States and New York State Constitution(s) were and is intended to place a chilling effect upon the exercise of such rights by Plaintiff, as well as to place a chilling effect on other officers of a similar color, race, and national origin who intend to retire in good standing with County of Nassau.

113.    By their actions, Defendants CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR ROBERT KENNEDY, POLICE BENEVOLENT ASSOCIATION PRESIDENT SHAWN RANDALL, DETECTIVE SERGEANT DONNIE ETHIER, ASSISTANT CHIEF RAYMOND HORTON, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE, DEPUTY MAYOR JORGE MARTINEZ, and TRUSTEE RONALD ELLERBE have intentionally deprived Plaintiff of valuable rights based on improper, unlawful and unconstitutional motives of denial of equal protection and refusal to adhere to Federal and State Law.

114.    All of Defendants' actions were taken under color of State law.

115.    Plaintiff who previously possessed, maintained, carried and owned firearms, had his rights revoked and/or indefinitely suspended contrary to his rights, existing law and the 2nd

Amendment of the United States Constitution.

116.    Defendants have failed to conduct a proper due process hearing which is their obligation and responsibility to provide Plaintiff and to ensure "in a meaningful time and in a meaningful manner."

117.    As a direct consequence of the actions of the collective Defendants, Plaintiff was unreasonably denied his rights and caused to live in perpetual fear for his safety, as he was denied his right to property and right to care for his own well-being.

118.    Hence, Plaintiff suffered monetary damages, special damages, legal fees, and unwarranted medical fees/costs, loss of time, loss of privileges and immunities due to the discriminatory actions of Defendants.

119.    Individual Defendants have acted with malicious intent and/or with reckless or callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

120.    Defendants have acted intentionally and/or recklessly and with gross negligence to his duties and obligation to adhere to the law and to act free of discrimination.

121.    Defendants knew that they were violating the law, discriminating against and violating Plaintiff's rights and agreed with one another to so discriminate because of Plaintiff's race, color, and national origin.

122.    In so acting, Defendant CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR ROBERT KENNEDY, POLICE BENEVOLENT ASSOCIATION PRESIDENT SHAWN RANDALL, DETECTIVE SERGEANT DONNIE ETHIER, ASSISTANT CHIEF RAYMOND HORTON, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE, DEPUTY MAYOR JORGE MARTINEZ, and TRUSTEE RONALD ELLERBE through his agents and employees, took actions

31

in violation of Plaintiff's rights which Defendants knew or should have known were discriminatory and unequal in treatment.

123.    As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer loss of benefits, loss of opportunities, loss of privileges, deprivation of constitutional rights, fear for personal safety, distress, humiliation, expense and embarrassment.

124.    Plaintiff is entitled to a declaratory judgment against Defendants in addition to an Order enjoining Defendants from continuing to engage in the discriminatory acts outlined above. Plaintiff suffered and is entitled to, a declaratory judgment correcting the wrongs and violations committed and damages sustained to date and continuing in excess of five million dollars ($5,000,000), as well as punitive damages, costs and attorney 's fees.

## AS AND FOR A THIRD COUNT
### *42 U.S.C. § 1983* - MUNICIPAL LIABILITY
### AGAINST THE VILLAGE OF FREEPORT

125.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 124 of this Complaint with the same force and effect as though fully set forth herein.

126.    By their actions, Defendants have intentionally deprived Plaintiff of valuable rights based on unlawful and unconstitutional motives of denial of equal protection, and refusal to adhere to federal and State Law.

127.    All of the Collective Defendants' actions were taken under color of State law.

128.    In addition, by actively inflicting and failing to prevent the above stated abuse incurred by Plaintiff, the Defendant acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff and persons of color based on their race, color and national origin. 146.

Defendants VILLAGE and POLICE DEPARTMENT, acting under color of law, and through their

employees servants, agents and designees, CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR

ROBERT KENNEDY, POLICE BENEVOLENT ASSOCIATION PRESIDENT SHAWN

RANDALL, DETECTIVE SERGEANT DONNIE ETHIER, ASSISTANT CHIEF RAYMOND

HORTON, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE, DEPUTY MAYOR JORGE

MARTINEZ, and TRUSTEE RONALD ELLERBE have engaged in a course of action and behavior

rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiff of rights,

privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. §1983.

These actions were condoned, adopted and fostered by policy makers including but not limited to

Defendants CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR ROBERT KENNEDY, POLICE

BENEVOLENT ASSOCIATION PRESIDENT SHAWN RANDALL, DETECTIVE SERGEANT

DONNIE ETHIER, ASSISTANT CHIEF RAYMOND HORTON, VILLAGE OF FREEPORT

TRUSTEE DEBRA MULE, DEPUTY MAYOR JORGE MARTINEZ, and TRUSTEE RONALD

ELLERBE .

129.    Defendants have consistently sought to discriminate against persons of color and

persons like Plaintiff and to engage in actions and abuses which violate and deny employee's their

rights as provided under the Fourteenth Amendment of the United States Constitution. Defendants

have done so by repeatedly denying their employees the proper treatment, equal care, attention, and

refusal to employ effective procedures to prevent and deal with racial discrimination and retaliation

in the work place. Further, Defendants have time and time again violated their employees rights by

subjecting them to retaliation and by allowing and fostering an unsafe and hostile work environment.

This is evidenced by Defendants consistent failure to rectify wrongful conduct, failure to question

actions, and failure to discipline; thus regularly condoning and in fact tolerating an unsafe and hostile

working environment, permeated with discrimination against Plaintiff and other Hispanic and Black employees.    Defendant here not only failed to follow their own rules and procedure but have manufactured excuses and false rationales for failing to follow their rules.

130.    By permitting and assisting such a pattern of misconduct, the Defendant, VILLAGE and POLICE DEPARTMENT, CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR ROBERT KENNEDY, POLICE BENEVOLENT ASSOCIATION PRESIDENT SHAWN RANDALL, DETECTIVE SERGEANT DONNIE ETHIER,  ASSISTANT CHIEF RAYMOND HORTON, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE, DEPUTY MAYOR JORGE MARTINEZ, and TRUSTEE RONALD ELLERBE acted under color of custom and policy to condone, encourage and promote the deprivation of Plaintiffs' Fourteenth Amendment rights.

131.    Defendants' infringement upon and in violation of the rights, described herein including those protected under the Fourteenth Amendment of the United States Constitution, was and is intended to discriminate against Plaintiff and those like Plaintiff. Defendants have sought to and have treated employees, like and including Plaintiff, as they have in violation of their equal protection rights.

132.    As a direct and proximate result of  the Defendant VILLAGE and POLICE DEPARTMENT, acting under color of law, and through their employees servants, agents and designees, CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR ROBERT KENNEDY, POLICE BENEVOLENT ASSOCIATION PRESIDENT SHAWN RANDALL, DETECTIVE SERGEANT DONNIE ETHIER,  ASSISTANT CHIEF RAYMOND HORTON, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE,  DEPUTY MAYOR JORGE MARTINEZ, and TRUSTEE RONALD ELLERBE policy and practice of not properly investigating their employees' complaints, failing to implement their policy, and thus fostering and condoning a hostile work environment by tolerating

34

the use of racially offensive slurs, and comments, VILLAGE and POLICE DEPARTMENT has been subjected to numerous federal and state Complaints and lawsuits alleging Defendant's discriminatory acts towards their employees as violations of section 1983.

133.    For examples of similar lawsuits filed against the  VILLAGE and POLICE DEPARTMENT alleging failure to investigate a claim put forth by their employee, based on race and/or retaliation see, inter alia:

•    *Pearse v. Inc. Village of Freeport, Freeport Police Dept*. No. CV 81-1217 EDNY

•    *Skates v. Incorporated Village of Freeport* CV 15-1136 (SJF)(AYS) EDNY

•    *Walker v. Village of Freeport* 15CV 15-4646 (JFB)(SIL) EDNY

134.    Defendants, intentionally and knowingly as an act of discrimination based on race failed to promote the Plaintiff  because of his race and color in violation of 42 U.S.C. §1983.

135.    As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to his reputation.

136.    The Freeport Police Department has permitted, tolerated and encouraged the unjustified, unreasonable denial of a "Good Guy Letter" to Plaintiff, Mr. Velasquez as a form of retaliation and further discrimination consistent with its policy, practices, custom and usage.

137.    Although such conduct was improper, said incidents were supported by the Freeport Police Department, its agents, employees and servants, such as Defendant BERMUDEZ.

138.    Said discriminatory acts by KENNEDY and BERMUDEZ have been fully backed by the Freeport VILLAGE and POLICE DEPARTMENT which has repeatedly and  unreasonably

35

sided with the abuse of persons so affected in nearly all cases, despite vast evidence of wrongdoing by its agents, employees, and servants at the Freeport Police Department against individuals of a different race, color, and national origin other than the majority white population at the Freeport Police Department, including Plaintiff herein.

139.    Additionally, the Freeport Police Department and the Incorporated Village of Freeport has systematically failed to identify the improper abuse, misuse, violative acts by its Chief of Police Miguel Bermudez  while further failing to subject such officers and officials to discipline, closer supervision, training, instruction, or restraint.

140.    By permitting and assisting such a pattern of misconduct, the Defendant Freeport Police Department and the Incorporated Village of Freeport acted under color of custom and policy to condone, encourage and promote the deprivation of Plaintiff's Second (2nd) and Fourteenth (14th) Amendment rights

141.    As a consequence of the Defendant's systemic practice, pattern, and  custom of intentionally promoting and supporting the Freeport Police Department and the Incorporated Village of Freeport violations of *42 U.S.C.* § 1983, Plaintiffs suffered and continue to suffer loss of benefits, loss of privileges, loss/deprivation of constitutional rights, fear for personal safety, distress, humiliation, expense, and embarrassment.

142.    Plaintiff is entitled to a declaratory judgment against Defendants in addition to an Order enjoining Defendants from continuing to engage in the discriminatory acts outlined above. Plaintiff suffered and is entitled to, a declaratory judgment correcting the wrongs and violations committed and  damages sustained to date and continuing, in excess of five million  dollars ($5,000,000), as well as punitive damages, costs and attorney 's fees.

36

## AS AND FOR A FOURTH COUNT
### *42 U.S.C.* § 1983 - MONELL CLAIM FOR NEGLIGENT SUPERVISION, FAILURE TO TRAIN, SUPERVISE AND DISCIPLINE AGAINST THE VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE INCORPORATED VILLAGE OF FREEPORT

143.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 142 of this Complaint with the same force and effect as though fully set forth herein.

144.    Defendants VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE INCORPORATED VILLAGE OF FREEPORT by and through their policymakers, created and maintained respective customs, policies and/or practices of negligently supervising, failing to adequately train, supervise and discipline their employees and agents, as well as police officers, agents, employees, and servants under their supervision and control in this case, regarding civilians' right to equal protection, and civilians' right to be free from discrimination and retaliation based on race, color, and/or national origin.

145.    Defendants VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE INCORPORATED VILLAGE OF FREEPORT had actual or constructive notice of their negligent supervision, and failures to train, supervise and discipline their employees. This is because Defendants knew that it was foreseeable that their employees would confront situations requiring knowledge of individuals' Civil Rights, and association rights, discrimination based on national origin, race, color, etc., and that without the necessary training, supervision and discipline, constitutional violations would result. Yet Defendants VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE INCORPORATED VILLAGE OF FREEPORT chose not to provide such training, supervision and discipline.

146.    Defendant VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE INCORPORATED VILLAGE OF FREEPORT negligent supervision, failure to train, supervise and discipline amounted to gross negligence, deliberate indifference and/or intentional misconduct, and encouraged and/or permitted the named and unnamed individual Defendants to engage in the conduct which proximately and directly caused Plaintiff's injuries and damages set forth above.

147.    As a result of Defendants unlawful acts, Plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs, attorney's fees and punitive damages, together in excess of five million dollars ($5,000,000).

### AS AND FOR A FIFTH COUNT
### *42 U.S.C.* § 1983 - MUNICIPAL LIABILITY
### FOR DISCRIMINATION AND RETALIATION
### AGAINST THE VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE
### INCORPORATED VILLAGE OF FREEPORT

148.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 147 of this Complaint with the same force and effect as though fully set forth herein.

149.    Prior to Plaintiff's wrongful termination on July 5, 2017 and since, Defendant VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE INCORPORATED VILLAGE OF FREEPORT has permitted a pattern of unjustifiable, unreasonable, and unequal treatment of minority classes who are employed at the Freeport Police Department.

150.    Although such abusive conduct is improper and illegal, the officials, officers, agents, and employees of Freeport Police Department working at the Freeport Police Department were not and are not being seriously prosecuted, disciplined, or subjected to restraint.  The reaction of Freeport Police Department and the Incorporated Village of Freeport in response to such discrimination and retaliatory conduct of its employees at the Freeport Police Department were in

38

fact attempts to cover up such abuses with official claims, reports, and investigations that claim such incidents never occurred.

151.   As a result, Defendant VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE INCORPORATED VILLAGE OF FREEPORT, KENNEDY, BERMUDEZ , and the police officers who have retaliated and/or discriminated against Plaintiff, were caused and encouraged to believe that fellow officers of a minority class can be abused, bullied, harassed, physically assaulted, retaliated against, and that such abuses would be permitted by VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE INCORPORATED VILLAGE OF FREEPORT, KENNEDY, BERMUDEZ .

152.   Examples of this fact of discrimination, retaliation, and disparate treatment of minority officers that have been condoned by VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE INCORPORATED VILLAGE OF FREEPORT to continue at VILLAGE OF FREEPORT POLICE DEPARTMENT have been referenced in the statement of facts paragraphs of this instant Amended Complaint.

153.   In addition to permitting a pattern and practice of discrimination and retaliation in the Freeport Police Department work place amongst fellow officers and supervisors, VILLAGE and VILLAGE OF FREEPORT POLICE DEPARTMENT has also failed to properly investigate such matters of disparate treatment of minority officers by fellow officers, supervisors, and officials.

154.   The VILLAGE OF FREEPORT POLICE DEPARTMENT AND THE INCORPORATED VILLAGE OF FREEPORT is therefore liable under 42 U.S.C. §1983 because the COUNTY has had actual and/or constructive knowledge of the patterns of abuse, discrimination, harassment, and retaliation of its police officers, employees, and/or agents by supervisors, and

39

individuals in authority in violation of the United State Constitution.

155.   As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of his freedom, was made to suffer great pain and suffering, and was subjected to great fear and terror, personal humiliation, degradation, mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

156.   As a direct result of said acts, Plaintiff has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

157.   That by reason of the foregoing, Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in sum in excess of five million dollars ($5,000,000.00), including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR A SIXTH COUNT
## VIOLATION OF N.Y. EXECUTIVE LAW, ARTICLE 15

158.   Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 157 of this Complaint with the same force and effect as though fully set forth herein.

159.   The above-captioned Defendants, VILLAGE and POLICE DEPARTMENT, acting under color of law, and through their employees servants, agents and designees, CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR ROBERT KENNEDY, POLICE BENEVOLENT

ASSOCIATION PRESIDENT SHAWN RANDALL, DETECTIVE SERGEANT DONNIE ETHIER, ASSISTANT CHIEF RAYMOND HORTON, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE, DEPUTY MAYOR JORGE MARTINEZ, and TRUSTEE RONALD ELLERBE by way of wrongfully terminating Plaintiff and failure of Defendants, and their administration to properly investigate complaints which allege race based discrimination, failure to issue Plaintiff a letter of good standing, their discriminatory treatment of Plaintiff on the basis of his race, color, national origin and opposition to discrimination, and their intentional creation of unequal terms and conditions, denied Plaintiff the rights to equal protection of the local, state and federal laws.

160.    By the Defendants' acts asset forth in the Factual Allegations above, Plaintiff was subjected to discriminatory treatment, and retaliation, based on race, color, and national origin. Said acts violate the New York State Human Rights Law (Executive Law § 296).

161.    As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological, emotional trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to her reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

162.    As a result of Defendants' unlawful acts, Plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs, attorney's fees and punitive damages, together in excess of five million dollars ($5,000,000).

## AS AND FOR A SEVENTH COUNT
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

163.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 162 of this Complaint with the same force and effect as though fully set forth herein.

164.    The Defendants, VILLAGE and POLICE DEPARTMENT, acting under color of law, and through their employees servants, agents and designees, CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR ROBERT KENNEDY, POLICE BENEVOLENT ASSOCIATION PRESIDENT SHAWN RANDALL, DETECTIVE SERGEANT DONNIE ETHIER, ASSISTANT CHIEF RAYMOND HORTON, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE, DEPUTY MAYOR JORGE MARTINEZ, and TRUSTEE RONALD ELLERBE through their conduct, acts and omissions as set forth in the above pleaded allegations, acted outrageously and beyond the bounds of decency, for their above-stated, respective roles in the discrimination and retaliation against Plaintiff including but not limited to the failure to redress the wrongs done to Plaintiff Sigfredo Velasquez.

165.    The Defendants committed the above stated reprehensible, extreme and outrageous conduct against Plaintiff with full knowledge that their conduct would cause severe and extreme emotional harm to Plaintiff and to his close family members, and with such extreme emotional harm being intended.

166.    Said extreme emotional harm, with psychological and physical symptoms manifesting therefrom, did in fact occur in this case, in that the Plaintiff was debilitated, terrified, humiliated, and caused to suffer anxiety and anguish, by the Defendants' discriminatory acts committed against him.

167.     As a direct result of said acts, Plaintiff has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

168.     That by reason of the foregoing, Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in sum in excess of five million dollars ($5,000,000.00), including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR AN EIGHTH COUNT
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

169.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 168 of this Complaint with the same force and effect as though fully set forth herein.

170.     The Defendants, VILLAGE and POLICE DEPARTMENT, acting under color of law, and through their employees servants, agents and designees, CHIEF OF POLICE MIGUEL BERMUDEZ, MAYOR ROBERT KENNEDY, POLICE BENEVOLENT ASSOCIATION PRESIDENT SHAWN RANDALL, DETECTIVE SERGEANT DONNIE ETHIER, ASSISTANT CHIEF RAYMOND HORTON, VILLAGE OF FREEPORT TRUSTEE DEBRA MULE, DEPUTY MAYOR JORGE MARTINEZ, and TRUSTEE RONALD ELLERBE  through their conduct, acts and omissions as set forth in the above pleaded allegations, acted negligently, outrageously and beyond the bounds of decency, for their above-stated, respective roles in the discrimination and

43

retaliation against Plaintiff including but not limited to the failure to redress the wrongs done to Plaintiff Sigfredo A. Velasquez.

171. When the Defendants committed the above stated reprehensible, extreme and outrageous conduct against Plaintiff they knew and/or should have known that their conduct would cause severe and extreme emotional harm to Mr. Velasquez, and to his close family members, and with such extreme emotional harm being intended.

172. Said extreme emotional harm, with psychological and physical symptoms manifesting therefrom, did in fact occur in this case, in that the Plaintiff was debilitated, terrified, humiliated, and caused to suffer anxiety and anguish, by the Defendants' discriminatory acts committed against her.

173. As a direct result of said acts, Plaintiff has suffered and continues to suffer repeated, severe and permanent psychological, emotional trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

174. That by reason of the foregoing, Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in sum in excess of five million dollars ($5,000,000.00), including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

**WHEREFORE** Plaintiff demands judgment against Defendants as follows:

a.     First Count: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

b.     Second Count: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

c.     Third Count: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

d.     Fourth Count: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

e.     Fifth Count: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

f.     Sixth Count: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

g.     Seventh Count: in excess of five million ($5,000,000.00) dollars as well punitive damages, costs and attorney's fees.

h.     Eight Count: in excess of five million ($5,000,000.00) dollars as well punitive damages, costs and attorney's fees.

I.     Punitive damages in the amount of TEN MILLION ($10,000,000) DOLLARS.

j.     Award attorney's fees and costs of this action to the Plaintiffs pursuant to 42 U.S.C. § 1988;

k.     Declaratory Judgment that defendants wilfully violated Plaintiffs' rights secured by federal and state law as alleged herein;

l.     Injunctive relief, requiring defendants to correct all past violations of federal and state law as alleged herein; to enjoin defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

m.     Award such other and further relief as this Court may deem appropriate

## *A JURY TRIAL IS HEREBY DEMANDED*

Dated: Hempstead, New York
      January 16, 2020

                               Respectfully submitted,

                               THE LAW OFFICES OF
                               FREDERICK K. BREWINGTON

By: _____

                               FREDERICK K. BREWINGTON
                               *Attorneys for Plaintiff*
                               556 Peninsula Boulevard
                               Hempstead, New York 11550
                               (516) 489-6959

# EXHIBIT A

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Sigfredo Velasquez**<br>**2510 Coral Court**<br>**North Bellmore, NY 11710** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2019-01490** | **Holly M. Shabazz,**<br>**State & Local Program Manager** | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** **before you file suit may not be collectible.**

On behalf of the Commission

| | |
|---|---|
| | JUL 3 0 2019 |
| **Kevin J. Berry,**<br>**District Director** | *(Date Mailed)* |

Enclosures(s)

cc:
**FREEPORT VILLAGE POLICE DEPARTMENT**
**Attn: Director of Human Resources**
**40 North Ocean Avenue**
**Freeport, NY 11520**